UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN FURMAN,

Plaintiff,

-against-

**AMENDED**
**COMPLAINT**

**TRIAL BY JURY**
**DEMANDED**

SANFORD RICH, Individually, and in his capacity as Executive Director of the Board of Education Retirement System of the City of New York,
PETER J. CALANDRELLA, Individually, and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
RICHARD CARRANZA, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
ISAAC CARMIGNANI, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
RICHARD CARRANZA, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
GENEAL CHACON, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
APRIL CHAPMAN, Individually and in her capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
JOSE DAVILA, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
DEBORAH DILLINGHAM, Individually and in her capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
NATALIE GREEN GILES, Individually and in her capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
MICHAEL KRAFT, Individually and in his capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,
VANESSA LEUNG, Individually and in her capacity as a Member of the Board of Trustees and the Retirement Board of the Board of Education Retirement System of the City of New York,

GARY LINNEN, Individually and in his capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
JOHN MADERICH, Individually and in his capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
DONALD NESBIT, Individually and in his capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
LINDSEY OATES, Individually and in her capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
LORI PODVESKER, Individually and in her capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
SHANNON WAITE, Individually and in her capacity as a
Member of the Board of Trustees and the Retirement Board of the
Board of Education Retirement System of the City of New York,
MIGUELINA ZORRILLA-ARISTY, Individually and in her capacity
as a Member of the Board of Trustees and the Retirement Board of
the Board of Education Retirement System of the City of New York,
THE BOARD OF TRUSTEES OF THE BOARD OF EDUCATION
RETIREMENT SYSTEM OF THE CITY OF NEW YORK,
THE RETIREMENT BOARD OF THE BOARD OF EDUCATION
RETIREMENT SYSTEM OF THE CITY OF NEW YORK,
THE BOARD OF EDUCATION RETIREMENT SYSTEM OF
THE CITY OF NEW YORK, and THE CITY OF NEW YORK,

Defendants.

---------------------------------------------------------------------X

Plaintiff, JOHN FURMAN, respectfully alleges as follows:

## NATURE OF THE ACTION

1. This action seeks redress; including money damages and injunctive relief, for the harm done to plaintiff, JOHN FURMAN as a result of defendants' breach of an agreement entered into between plaintiff, JOHN FURMAN and defendants pursuant to which defendants; in consideration of plaintiff's agreement to withdraw an appeal pending in the Supreme Court of the

State of New York, Appellate Division: Second Department, agreed to reconsider and determine, on remand, plaintiff's application for an Accidental Disability Retirement Benefit in accordance with the New York Retirement and Social Security Law. However, as indicated below, defendants, after immediately receiving the benefit of their bargain; i.e., withdrawal of plaintiff's appeal, waited over three (3) years before finally rendering, on remand, a final determination denying plaintiff's application. Initially, the predeprivation procedure relied on by defendants was clearly inadequate to meet the minimal requirements of due process. Specifically, defendants, in contrast to other public sector employee retirement systems, did not afford plaintiff, before finally determining his application, an administrative hearing at which he could offer testimonial and documentary evidence (including expert testimony) before a hearing officer. In light of the above, it is perhaps not surprising that defendants' July 31, 2019 final determination (rendered almost three (3) months *after* the instant action was filed) is, on its merits, so woefully inadequate as to rise to the level of a gross abuse of governmental authority which shocks the conscience, and which supports a claim for violation of substantive due process. Defendants' actions in this regard, gives rise to liability on their part under the constitution and statutes of the United States as well as liability in common law for breach of contract. This action also seeks a declaratory judgment, under New York law, setting forth the respective rights, entitlements, obligations and liabilities of plaintiffs and defendants arising under the above referenced agreement entered into between plaintiff and defendants and under New York State law. This action seeks, in addition to all relief otherwise provided for by law; punitive damages.

JURISDICTION AND VENUE

2. This Court has original jurisdiction of this action, pursuant to 28 U.S.C. §§ 1332

(a), since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between citizens of different states.

3. Additionally, this Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Additionally, this court has supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), because defendants, THE BOARD OF TRUSTEES OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE RETIREMENT BOARD OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK and THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK reside in this district and, upon information and belief, all the remaining defendants are residents of the State in which this district is located and it is a district in which a substantial part of the events or omissions giving rise to the claim occurred.

## THE PARTIES

6. Plaintiff, JOHN FURMAN ("plaintiff" or "Mr. Furman") is a resident of the State of Florida.

7. Defendant, THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK ("Retirement System") is an agency of defendant, THE CITY OF NEW YORK, charged with the responsibility of paying the retirement allowances and other benefits provided under the Rules and Regulations of the Board of Education Retirement System of the City of New York (hereinafter, "Rul. And Reg.") for all civil employees permanently

employed by the New York City Department of Education (other than superintendents and teachers who may be retired under the provisions of other retirement laws) including applications for Article 15 Disability Retirement pursuant to § 605 of the New York Retirement and Social Security Law (hereinafter, "RSSL").

8. Defendant, THE BOARD OF TRUSTEES OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK (“the Board of Trustees”) is the head of the Retirement System; establishes the policies for the administration and transaction of the business of the Retirement System, manages the Retirement System and the several funds created there under, and is charged with performing such other functions as are required for the execution of the provisions of the Retirement System’s rules and regulations.

9. Defendant, THE RETIREMENT BOARD OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK (“the Retirement Board”) is the head of the Retirement System; establishes the policies for the administration and transaction of the business of the Retirement System, manages the Retirement System and the several funds created there under, and is charged with performing such other functions as are required for the execution of the provisions of the Retirement System’s rules and regulations.

10. Upon information and belief, the Board of Trustees and the Retirement Board are, in fact, the same entity having previously been denominated as the Retirement Board; including

during the time when many of the material events related in this complaint took place, and later, having been denominated as the Board of Trustees.[1]

11. Defendant, THE CITY OF NEW YORK, is a municipal corporation organized and existing pursuant to the laws of the state of New York.

12. Defendant, SANFORD RICH, is the Executive Director and an employee of the Retirement System.

13. Defendant, PETER J. CALANDRELLA is a Member of the Board of Trustees and the Retirement Board.

14. Defendant, ISAAC CARMIGNANI is a Member of the Board of Trustees and the Retirement Board.

15. Defendant, RICHARD CARRANZA is a Member of the Board of Trustees and the Retirement Board.

16. Defendant, GENEAL CHACON is a Member of the Board of Trustees and the Retirement Board.

17. Defendant, APRIL CHAPMAN is a Member of the Board of Trustees and the Retirement Board.

18. Defendant, JOSE DAVILA is a Member of the Board of Trustees and the Retirement Board.

19. Defendant, DEBORAH DILLINGHAM is a Member of the Board of Trustees and the Retirement Board.

20. Defendant, NATALIE GREEN GILES is a Member of the Board of Trustees and

---

1 Consequently, and depending on context, the terms "Retirement Board" and "Board of Trustees" are used here

the Retirement Board.

21. Defendant, MICHAEL KRAFT is a Member of the Board of Trustees and the Retirement Board.

22. Defendant, VANESSA LEUNG is a Member of the Board of Trustees and the Retirement Board.

23. Defendant, GARY LINNEN is a Member of the Board of Trustees and the Retirement Board.

24. Defendant, JOHN MADERICH is a Member of the Board of Trustees and the Retirement Board.

25. Defendant, DONALD NESBIT is a Member of the Board of Trustees and the Retirement Board.

26. Defendant, LINDSAY OATES is a Member of the Board of Trustees and the Retirement Board.

27. Defendant, LORI PODVESKER is a Member of the Board of Trustees and the Retirement Board.

28. Defendant, SHANNON WAITE is a Member of the Board of Trustees and the Retirement Board.

29. Defendant, MIGUELINA ZORRILLA-ARISTY is a Member of the Board of Trustees and the Retirement Board.

ALLEGATIONS COMMON TO ALL CLAIMS

30. Plaintiff is a Tier 4 member of the Retirement System by virtue of his previous

---

interchangeably.

employment as a Custodian Engineer with the New York City Department of Education ("DOE") from June 26, 2003 to, on or about, July 29, 2010.

**a. Plaintiff's work-related accidents**

31. On June 26, 2003, Mr. Furman was injured in the course of his DOE employment while carrying a box down a flight of stairs when he tripped and fell; striking his head on the opened door at the bottom of the stair case.

32. Mr. Furman came under the care of Dr. Gregory Lieberman; an orthopedist, who diagnosed injuries to his plaintiff's neck, lower back and right knee. In an initial evaluation report, dated June 27. 2003 (the day after the accident), Dr. Lieberman noted a past history of surgery to both shoulders but did not note any history of injury or treatment to the neck or back.

33. As a result of the accident, Mr. Furman was immediately disabled from working; eventually returning to the job on November 17, 2003. A DOE Medical Bureau Report Form, dated November 13, 2003, which apparently memorializes the results of the first post-2003 accident examination by DOE, fails to note any history of preexisting back or neck problems.

34. On May 14, 2004, Mr. Furman's symptoms worsened and he again began to miss time from work. A DOE Medical Bureau Report Form, dated August 4, 2004 noted that in 1985, Mr. Furman had underwent a bone graft to his left wrist due to a fractured scaphoid and, further, that he suffered from left shoulder impingement syndrome following a motor vehicle accident. No history of neck or back pathology was noted.

35. Mr. Furman eventually returned to work on January 15, 2005. A DOE Medical Bureau Report Form, dated February 1, 2005, noted a history of arthroscopic surgery to the left shoulder as a result of a 1996 motor vehicle accident and a 1988 left scaphoid fracture. Again, no

history of neck or back pathology was noted.

36. On September 15, 2005, Mr. Furman aggravated his back condition while attempting to lift a window while at work. On December 30, 2005 he again began to miss work because of his injuries and was not cleared to return to work until July, 2007.

37. Thereafter, Mr. Furman suffered recurrent periods of disability which necessitated the use of extensive intermittent time off.

38. On February 24, 2009, Mr. Furman was involved in another accident at work; this time falling down the entrance steps to a school when he attempted to stop someone from braking into his car.

39. In June, 2009, DOE's Medical Bureau determined that he was not fit to return to duty and Mr. Furman, in fact, never returned to his DOE employment.

40. By letter of John T. Shea, Chief Executive Officer, DOE to Mr. Furman, dated July 29, 2010, Mr. Furman was advised that his employment was to be terminated because "you have not reported to work for one year and are unable to perform the duties of your position due to a disability resulting from an occupational injury…"

**b. Plaintiff's Application for Accidental Disability Retirement**

41. By written application dated August 14, 2009, Mr. Furman applied for an Accidental Disability Retirement benefit, pursuant to RSSL § 605. Attached to the application was a letter from Mr. Furman referencing his accidents of June 26, 2003 and September 15, 2005. Also attached was a copy of an MRI report of the lumbar spine, dated May 5, 2009.

42. RSSL § 605, provides in pertinent part:

> c. If the retirement system determines that the member is physically or

> mentally incapacitated for the performance of gainful employment, and that he was so incapacitated at the time he ceased his performance of duties and ought to be retired for disability, he shall be so retired. Each retirement system shall be entitled to adopt appropriate procedures for making the foregoing determination, including but not limited to the conducting of medical examinations, if any, for the purpose of determining initial entitlement of an applicant for disability retirement or to continued entitlement to a disability retirement allowance. Such retirement shall be effective as of a date approved by the head of the retirement system.

43. The statute further provides, at § 605 (b) (3) thereof:

> [I]f the retirement system determines that such member was physically or mentally incapacitated for performance of gainful employment as the natural and proximate result of an accident not caused by his own willful negligence sustained in the performance of his duties in active service while actually a member of the retirement system the requirement that the member should have ten years of credited service shall be inapplicable.

44. Pursuant to his application, Mr. Furman submitted to two (2) separate medical examinations by DOE's, Division of Human Resources, HR Connect-Medical Administration (herein after "the Medical Board"); conducted by Drs. R.J. Walker and J. Jeudy, respectively. In the conclusion of his report Dr. Walker noted:

> Patient clearly has a long history of lumbar and cervical disc disease. Had epidural injections in the past and has chronic pain. Is exacerbated for a time by various episodes of straining himself and lifting. He is not fit to work as a custodian which only aggravates his condition. He is only going to have repeated episodes. He is not a candidate for ADR but rather <u>ORD</u> for his work as a custodial engineer. (emphasis supplied)

45. Similarly, Dr. Jeudy noted a chronic condition; i.e., "low back pain syndrome – cervical pain syndrome", however, unlike Dr. Walker, he did not address, even in a peripheral sense, the issue of what caused Mr. Furman's condition.

46. In short, other than Dr. Walker's general reference to "various episodes of straining himself and lifting", there is nothing in either his report or Dr. Jeudy's which set forth a

basis for Mr. Furman's disability other than the accidents detailed in plaintiff's application.

47. That notwithstanding, by letter of Martha Berkowitz, Benefits Counselor, Retirement System, to Mr. Furman, dated October 21, 2009, plaintiff was advised that his application for Accidental Disability Retirement had been denied.

**c. Plaintiff's First Administrative Appeal**

48. By letter to DOE's Medical Division, dated January 13, 2010, Mr. Furman, without the aid of legal counsel, took an administrative appeal (hereinafter, "first administrative appeal"). In his letter he noted that the initial denial failed to set forth the reasons for the denial. He also noted that DOE, after having him examined on June 18, 2009, had found him unfit for duty.

49. In support of his appeal Mr. Furman enclosed four accident reports; a report of an EMG dated November 17, 2009; the latest medical reports from two of his doctors; reports of independent medical examiners stating that he suffered from a permanent disability; an award from the Social Security Administration granting him a Social Security disability benefit and a letter from DOE, dated June 18, 2009, finding him unfit for duty.

50. Pursuant to the first administrative appeal, DOE did not have Mr. Furman examined but rather forwarded his submission to be reviewed by Dr. Jeudy. The resulting note from Dr. Jeudy, dated February 2, 2010, simply states; "Submitted documents reviewed. Recommendation: ODR (Yes) ADR (No)." No analysis or explanation for this result is recited.

51. By letter of Martha Berkowitz, Benefits Counselor, Retirement System to Mr. Furman, dated February 8, 2010, Mr. Furman was advised that the first administrative appeal had been denied. The letter further stated that he could submit another administrative appeal with

supporting medical documentation.

### d. Plaintiff's Second Administrative Appeal

52. Plaintiff, by letter of his attorney, Wayne J. Schaefer, Esq. to Christine Bailey, the then Executive Director, dated January 31, 2012, took a second administrative appeal.

53. Attached to the second administrative appeal, in addition to the documents previously cited, was the medical narrative report of Mr. Furman's treating orthopedist; Dr. Gregory Lieberman, dated November 9, 2010. In his report, Dr. Lieberman noted that he began treating with Mr. Furman the day after the June 26, 2003 accident. He also noted subsequent accidents of September 15, 2005 and February 24, 2009. After describing, in detail, his course of treatment and review of diagnostic test results, Dr. Lieberman stated his impression; diagnosing Mr. Furman with herniated cervical disc, lumbar radiculopathy, sacroiliac joint dysfunction, contusion elbow, contusion knee, tear medial meniscus, medial epicondyle sprain, and elbow sprain.

54. With regard to Mr. Furman's disability, Dr. Lieberman stated as follows:

> Patient is totally disabled. I do believe that the patient's disability stems from the initial work accident on 06-26-2003. On 06-26-2003, he had the most significant injury when he fell down multiple steps. He never fully recovered, and again had a couple of exacerbations afterwards… The patient's prognosis is poor… **I would attribute 90% of his injuries to the accident of 06-26-2003 and 10% to the subsequent accidents.** (emphasis added).

55. In an addendum dated October 14, 2011, Dr. Lieberman reiterated his opinion that the proximate cause of Mr. Furman's conceded disability was the June 26, 2003 accident.

56. In his second administrative appeal, Mr. Furman argued that there was simply no

evidentiary basis which supported a determination that Mr. Furman's disability was attributable to anything other than the accidents alleged in his application; particularly the accident of June 26, 2003. Specifically, the medical history taken by Dr. Lieberman one day after the June, 2003 accident listed as the only significant medical history; surgery to both shoulders. There was no notation of any history of neck or back pathology. The absence of any indication of pre-2003 back or neck problems was corroborated not only by the multitude of reports generated by Dr Lieberman over a period of eight years, but also, as noted above, by DOE's own medical examiners who noted a pre-2003 arthroscopic surgery to the left shoulder and 1988 left scaphoid fracture – but no preexisting injuries or treatment to the neck or back.

57. By letter of Martha Berkowitz, Benefits Counselor, Retirement System to John Furman, dated June 1, 2012 (hereinafter, "the Berkowitz letter"), plaintiff was advised that his second administrative appeal had been denied. The Berkowitz letter states "[y]our request for an appeal denying your accidental disability pension has been denied again by the NYC Department of Education HR-Connect-Medical Administration Department… Please remember that [the Retirement System] does not make the decision for your disability claim."

58. In support of its representation that the second administrative appeal was denied by DOE's, Division of Human Resources, HR Connect Medical Administration Office, the Berkowitz letter cites the memorandum incorporated therein, of Hubert Guscott, Manager, New York City Department of Education, Division of Human Resources, HR Connect-Medical Administration, dated May 23, 2012 (hereinafter, "the Guscott memorandum").

59. In contrast, to the characterization in the Berkowitz letter, the Guscott memorandum makes clear that its action with regard to the second administrative appeal was not a DOE *determination* but a *recommendation*:

> With regard to Mr. John Furman's 2nd appeal of the decision denying his accidental disability retirement, please be advised that based on a thorough review of additionally submitted medical documentation, we continue to *recommend* that Mr. Furman ought not to be retired on account of accidental disability. (emphasis added).

**e. Plaintiff's Article 78 Proceeding Challenging the Determination**

60. On September 21, 2012, plaintiff commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules in New York State Supreme Court, County of Kings, challenging the Retirement System's determination of his second administrative appeal as arbitrary and capricious, and abuse of discretion and affected by error of law.[2]

61. In the Article 78 proceeding plaintiff argued, initially, that the denial of his application was procedurally defective since the party empowered to make the final determination, the Retirement Board, never did so; apparently proceeding under the misapprehension that the authority to make the ultimate decision rested with the Medical Board. In fact, as plaintiff pointed out to the court, while the Medical Board was the sole arbiter of the limited issue of whether plaintiff was disabled, only the Retirement Board had the authority to determinate whether plaintiff's disability was caused by an "accident" within the meaning of the law; sustained in the service upon which his membership was based.

62. Defendants' procedural *faux pas* was particularly egregious in the instant case since, with regard to the sole issue properly determined by the Medical Board, plaintiff prevailed; i.e., he

was found by the Medical Board to be totally disabled from performing his duties. That being the case, his application should then have been forwarded to the Retirement Board for a determination of the issue of whether the conceded disability was the result of a service-connected accident. Had the Retirement Board reached that issue, it would have had before it the medical narrative report of plaintiff's treating orthopedist; Dr. Gregory Lieberman in which he opined that the proximate cause of plaintiff's disability was a June 26, 2003 accident in which plaintiff tripped and fell down a flight of stairs while carrying a box. Moreover, plaintiff argued, speculation that the Retirement Board, if it had acted upon the plaintiff's application, may have concluded that his disability resulted from two other service-connected events and that those events did not constitute "accidents" did not provide a basis for upholding the denial.

63. Pursuant to a decision, order and judgment, dated January 20, 2015, the Supreme Court denied the petition in its entirety and dismissed the proceeding. In a one-sentence analysis at the end of its decision rejecting plaintiff's procedural challenge, the Court sanctioned the Medical Board's aggregation of authority to determine the issue of whether plaintiff's disability was caused by a service-connected accident or accidents, and then ruled that the Medical Board's resulting findings -- that the plaintiff's disability was attributable to injuries sustained on the job which did not result from "accidents" within the meaning of the law -- was not arbitrary and capricious.

**f. Plaintiff's Appeal to the Appellate Division: Second Department**

64. Plaintiff took a timely appeal of the Supreme Court's decision, order and judgment to the Appellate Division: Second Department.

65. Plaintiff perfected his appeal, on or about December 31, 2015. In the Appellate

2 A copy of the Verified Petition in *Matter of John Furman v Christine Bailey, et. al*, (Kings Co. Index No.

Division, plaintiff contended, on brief, that since the Retirement System's own Rules and Regulations, when read against a backdrop of case authorities interpreting virtually identical provisions concerning other City retirement systems, provide that the Medical Board was charged with determining only whether plaintiff was disabled, it was reversible error for the court to uphold defendants' action relinquishing their authority to determine the remaining issues concerning plaintiff's application. Moreover, plaintiff argued, since the record demonstrates that the Retirement System, if it had exercised its duly constituted authority, was not precluded from finding that (1) plaintiff's conceded disability was caused by one of the service-related injuries alleged in his application; and (2) that any such service-related injury resulted from an "accident" within the meaning of law, a remitter was warranted directing the Retirement System to conduct further proceedings in accordance with the Court's opinion.

66. Defendants, in lieu of serving and filing a brief in opposition, moved to dismiss the appeal which, after a number of adjournments, was made returnable on July 8, 2016.

**g. The Parties Stipulate to a Withdrawal of the Appeal and Remand of Plaintiff's Application**

67. While their motion was pending, defendants' initiated negotiations with plaintiff in an attempt to reach a resolution which would not result in submission of plaintiff's appeal.

68. Ultimately, plaintiff and defendants entered into a written stipulation, dated June 1, 2016 ("Initial Stipulation") which provided, among other things; (1) that defendants' previous denial of plaintiff's application for an Accidental Disability Retirement was annulled in its entirety and remitted to defendants for further proceedings in accordance with the stipulation; (2) that

19045/12), dated September 14, 2014 (without the attached exhibits), is attached as Exhibit A.

plaintiff was disabled within the meaning of RSSL § 605 (c); (3) amended plaintiff's application to delete any allegation that he was disabled as a result of injuries sustained on September 15, 2005 and February 24, 2009 as previously alleged; and (4) restricted the issues on remand to (i) whether plaintiff's disability was proximately caused by the remaining June 26, 2003 injury alleged in the application; and (ii) whether the June 26, 2003 injury alleged in the application constituted an "accident" within the meaning of the RSSL.

69. The Initial Stipulation further provided that plaintiff would have sixty (60) days from the date of the Stipulation to submit additional documents in support of his application. The Initial Stipulation provided that (1) upon the expiration of the sixty (60) day period the Medical Board shall report in writing to the Retirement Board its conclusions and recommendation upon plaintiff's application, as modified by the stipulation; and (1) that the Retirement Board shall, by a resolution adopted by a majority vote of the Board as a whole, render a determination adopting the conclusion of the Medical Board as to disability and adopting or rejecting the recommendations of the Medical Board as to whether that disability was caused by an injury received in education-service and would render a determination as to whether the incident that resulted in plaintiff's injury constituted an "accident", as provided by law.

70. Finally, the Initial Stipulation provided that both the appeal and defendants' motion to dismiss the appeal would be withdrawn and that the Initial Stipulation could be submitted to the Appellate Division to be "So-Ordered" by either party without further notice.

71. By letter of Wayne J. Schaefer to the Appellate Division, dated June 3, 2016, plaintiff submitted a copy of the Initial Stipulation with a request that it be "So-Ordered".

72. In response, plaintiff's counsel was advised by the Appellate Division Clerk's office

that the Court would not accept, to be "So-Ordered", a stipulation which contained provisions regarding anything other than the disposition of the appeal and the motion to dismiss.

73. Consequently, on July 8, 2016, the parties executed two stipulations, one which exclusively provided for a withdrawal of the appeal and defendants' pending motion to dismiss ("The "Withdrawal Stipulation") and a second one which repeated virtually, *verbatim*, the Initial Stipulation's provisions governing the annulment of the previous denial of plaintiff's application, its amendment and administrative determination upon remand to the Retirement System ("The Merits Stipulation").

74. Specifically, the Merits Stipulation, like the Initial Stipulation provided that (1) that defendants' previous denial of plaintiff's application for an Accidental Disability Retirement was annulled in its entirety and remitted to defendants for further proceedings in accordance with the stipulation; (2) that plaintiff was disabled within the meaning of RSSL § 605 (c); (3) that plaintiff's application was deemed amended to delete any allegation that he was disabled as a result of injuries sustained on September 15, 2005 and February 24, 2009 as previously alleged; and (4) restricted the issues on remand to the Retirement System to (i) whether plaintiff's disability was proximately caused by the remaining June 26, 2003 injury alleged in the application; and (ii) whether the June 26, 2003 injury alleged in the application constituted an "accident" within the meaning of the RSSL.

75. The Merits Stipulation further provided that plaintiff would have sixty (60) days from the date of the Merits Stipulation to submit additional documents in support of his application. The Merits Stipulation provided that (1) upon the expiration of the sixty (60) day period the Medical Board shall report in writing to the Retirement Board its conclusions and recommendation upon

plaintiff's application, as modified by the stipulation; and (1) that the Retirement Board shall, by a resolution adopted by a majority vote of the Board as a whole, render a determination adopting the conclusion of the Medical Board as to disability and adopting or rejecting the recommendations of the Medical Board as to whether that disability was caused by an injury received in education-service and would render a determination as to whether the incident that resulted in any such injury constituted an "accident", as provided by law.

76. Lastly, the Merits Stipulation provided that it would become effective only upon entry into the Withdrawal Stipulation and the subsequent withdrawal of the motion to dismiss and the appeal

77. The Withdrawal Stipulation, in contrast, simply set forth the parties agreement to withdraw the motion to dismiss and the appeal.

78. By letter of Wayne J. Schaefer Esq. to the Appellate Division, dated July 8, 2016, a copy of the Withdrawal Stipulation was forwarded to the Court.

79. Pursuant to a Decision and Order on Application, dated July 14, 2016, the Appellate Division granted the application to withdraw the appeal.

**h. Defendants' Determination on Remand and Recession of their Determination**

80. Following the withdrawal of the appeal, plaintiff, by letter of his attorney, Wayne J. Schaefer to defendant, SANFORD RICH, dated September 16, 2016, forwarded, for submission in further support of Mr. Furman's application, the medical report (3 pages) of Dr. Gregory M. Lieberman, MD, dated March 18, 2016. The letter also noted that the 60-day period set forth in the Merits Stipulation for plaintiff to submit additional medical documentation had been extended, by mutual agreement, to September 20, 2016. The letter closed with a request that

the Retirement System keep plaintiff's attorney's advised on the status of the application.

81. By letter of his attorney, Wayne J. Schaefer to defendant, SANFORD RICH, dated January 10, 2017, plaintiff noted that a determination had yet to be rendered an asked for an update on the status of the application.

82. By letter of Wayne J. Schaefer to defendant, SANFORD RICH, dated March 24, 2017, plaintiff's counsel noted that it had been more than 6 months since Mr. Furman's submission on remand yet no decision had been rendered. The letter closed with a request that Mr. Rich contact plaintiff's attorney and advise when a decision might be expected.

83. By letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, plaintiff was advised that the Retirement Board had denied his application. Enclosed with the letter was a copy of the Board's resolution upon which the denial was apparently based.

84. By letter of Wayne J. Schaefer to defendant, SANFORD RICH, dated September 18, 2017 ("the Schaefer Letter), plaintiff's counsel noted the Board resolution did not reference any recommendations by the Medical Board. In particular, it did not set forth any recommendations or conclusions by the Medical Board on the penultimate issues set forth above; namely whether Mr. Furman's disability was caused by the June 26, 2003 injury and whether that injury constituted an "accident". Instead the Board resolution simply stated, in conclusory fashion, "the Medical Board recommended that the member's application for Accidental Disability Retirement be denied."

85. The Schaefer Letter further noted that the Retirement System's decision was subject to judicial review in a CPLR Article 78 proceeding and that in such proceedings, courts routinely reject bald conclusory statements denying applications for disability retirement such as

the one employed here because such determinations are "not in 'such form as to permit adequate judicial review.' " (Schaefer Letter; citing, *Enide St. Louis v. New York City Employees' Retirement System*, 26 Misc.3d 1236(A), 907 N.Y.S.2d 436, 2010 N.Y. Slip Op. 50426(U) (Sup. Ct., Kings Co. 2010); quoting, *Matter of Perkins v. Board of Trustees of New York Fire Dept., Art. 1–B Pension Fund*, 59 A.D.2d 696, 697, 398 N.Y.S.2d 691 (1st Dept. 1977); also citing, *Matter of Samadjopoulos v. New York City Employees' Retirement Sys.,* 19 Misc.3d 1123[A], (Sup Ct, New York County 2008); *Rocco v. Scopetta,* 15 Misc.3d 1146[A] (Sup Ct, Kings County 2007)); see also, *Montauk Improv., Inc. v. Proccacino,* 41 N.Y.2d 913, 914, 394 N.Y.S.2d 619, 363 N.E.2d 344 (1977) ("[f]ailure of [an] agency to set forth an adequate statement of the factual basis for the determination forecloses the possibility of fair judicial review and deprives the petitioner of [her] statutory right to such review.").

86. Accordingly, the Schaefer Letter requested, on behalf of Mr. Furman, that the Retirement System reconsider the denial of his application.

87. The Schaefer Letter further advised that upon reconsideration, any ensuing determination should specifically set forth the Retirement System's findings on the following issues; (1) whether Mr. Furman's conceded disability is proximately caused by his June 26, 2003 injury and (2) whether that injury constitutes an "accident" within the meaning of the Retirement and Social Security Law. (¶ 8).

88. Finally, the Schaefer Letter laid bare, plaintiff's apprehension that, on remand, no substantive reconsideration of Mr. Furman's amended application ever took place:

> It is also apparent that the conclusory nature of both the final determination and the Board of Trustees' resolution upon which it relies, give rise to a legitimate doubt as to whether, upon remittitur, BERS [the Retirement

> System] initiated the fact-based inquiry and redetermination process provided for in the Stipulation or, instead, simply had the Board of Trustees formally adopt the same findings of the Medical Board relied on by BERS in issuing the June 1, 2012 determination which was the subject of the previous Article 78 proceeding.

89. In light of these concerns, the Schaefer Letter specifically requested that any determination upon reconsideration specifically identify the actions undertaken by the Retirement System in the course of redetermining the application and, to that end, identify, among other things, (1) the individual or individuals who conducted the review of Mr. Furman's application and the medical records incorporated in their review; (2) the dates on which such review or reviews were undertaken; and; (3) a description; including the date and source, of all documents relied on by the Medical Board and the Board of Trustees in rendering their respective recommendations and conclusions.

90. In closing, the Schaefer letter noted:

> Your failure to comply with these requests will only serve to confirm what seems otherwise apparent; that following remittitur of the application to BERS, no substantive reconsideration of Mr. Furman's application was ever undertaken and that BERS, in lieu undertaking a reconsideration in accordance with the Stipulation, simply had the Board of Trustees rubber-stamp the previous findings of the Medical Board. In light of this, and for the remaining reasons set forth above, we are confident that in the event our request for reconsideration is denied, any judgment in an ensuing Article 78 proceeding will, at a minimum, direct BERS to reconsider the application in a substantially similar manner to that requested here.

91. By letter of Alexander Kazaziz, Acting General Counsel of The Retirement System to Wayne Schaefer, dated October 3, 2017, the Retirement System advised plaintiff that:

> on September 27, 2017, the BERS Board of Trustees resolved to *rescind its previous determination* denying Mr. Furman's application for accidental disability retirement, return such application to the Medical Board for further

> evaluation and thereafter, reconsider Mr. Furman's application for disability retirement. (emphasis added)

92. The Kazaziz letter closed with a request that plaintiff forward a signed Release of Health Information form.

93. By letter of Sharon Koppula, Agency Attorney to Wayne J. Schaefer, dated December 20, 2017, the Retirement System acknowledged receipt of the signed authorization for the release of health information and further confirmed that upon receipt of further medical documentation from plaintiff "Mr. Furman's application will be submitted for review."

**i. Defendants' Unconscionable Delay in Rendering a Final Determination**

94. By letter of Wayne J. Schaefer to Sharon Koppula, Agency Attorney, dated January 31, 2018, plaintiff forwarded the medical narrative report of David J. Weissberg, MD, dated December 11, 2017. In his 5-page narrative report, Dr. Weissberg referenced, over the course of two-and-a-half pages, all of the injury reports, medical records, diagnostic test results and related documents he reviewed in the course of preparing his report. The report also set forth detailed findings following his physical examination of Mr. Furman on November 16, 2017.

95. In his January 31, 2018 report, under the heading "Impression", Dr. Weissberg noted:

> It is my impression with a reasonable degree of medical certainty at this time that this patient's injuries were directly and causally related to the work related accident that the patient sustained on June 26, 2003. Although he may have exacerbations of his symptoms due to subsequent injuries, the direct cause of these injuries was due to his 2003 accident and were only exacerbated but not caused by his subsequent injuries. These injuries caused the patient to have a permanent disability and retirement and, again, in my opinion with a reasonable degree of medical certainty are directly and causally related to the 2003 work related accident and were only exacerbated by his subsequent injuries.

96. In his letter of January 31, 2018, plaintiff's counsel noted that "[w]ith the submission of this report, Mr. Furman's submission in support of his application for reconsideration is now complete." The letter closed with a request that the Retirement System contact plaintiff's attorney should anything further be required.

97. On or about May 10, 2018, Wayne Schaefer, having heard nothing further, spoke by telephone with Sharon Koppula. Ms. Koppula advised plaintiff's counsel that the Retirement System was expecting a report from their medical consultant by the end of the week; that an effort would be made to get plaintiff's case on the May agenda for the meetings of, in succession, the Medical Board and then the Retirement Board and that if that did not occur, his case would probably be on the agenda for June.

98. On July 10, 2018, after again, failing to receive any communication from the Retirement System, plaintiff's counsel again spoke with Sharon Koppula in an effort to ascertain the status of the application. This time Ms. Koppula advised Mr. Schaefer that the Retirement Board's "Disability Committee" had met and referred the application back to the Medical Board for further evaluation; that once the Medical Board's reevaluation was completed, the application will be placed back on the "Disability Committee's" agenda.

99. In a letter to Ms. Koppula also dated July 10, 2018, plaintiff's counsel confirmed the representations recited in the preceding paragraph and again requested that the Retirement System keep him advised of the status of the application.

100. In the ten months following the conversation between counsel related above, neither plaintiff nor his counsel received any further communication from defendants; including,

but not limited to, any request from defendants for further documentation or information needed to finalize the determination of plaintiff's application.

### j. Plaintiff Commences the Instant Action

101. On May 5, 2019, plaintiff, having been divested of any legitimate expectation that a final determination would be forthcoming within a reasonable amount of time, if at all, commenced the instant action.

102. Plaintiff's original complaint (Docket No. 1) pled six (6) claims for which relief can be granted; including causes of action for breach of contract (first), for declaratory judgment (second), pursuant to 42 U.S.C. Sec. 1983 for wrongful deprivation of the Fourteenth Amendment right to due process (third, fourth and fifth) and alleging vicarious liability (sixth).

103. In fact, it was not until the initial scheduling conference in this matter held before the Court on August 20, 2019, that counsel for defendants represented that a final determination of plaintiff's application had, in fact, been rendered and that a written copy of the determination would be mailed to plaintiff shortly.

104. In light of the representation of defendants' counsel that a determination had finally been rendered, the Court adjourned the scheduling conference to September 24, 2019 for the purpose of affording plaintiff an opportunity to review the determination and, if he so chose, to amend his complaint.

105. In response to an inquiry from the Court at the August 20, 2019 conference, counsel for defendants represented that defendants would not oppose the filing of an amended complaint.

### k. Defendants' July 31, 2019 Final Determination

106. By letter of Maria Cepin, Director of Membership Services to John Furman, dated August 19, 2019, the Retirement System advised plaintiff that his application for an Accidental Disability Retirement benefit had been denied by the Retirement Board on July 31, 2019. Specifically, the letter referenced an enclosed written (undated) Retirement Board resolution ("Board Resolution") which noted that (1) plaintiff had submitted an application for Accidental Disability Retirement; (2) plaintiff had been examined by the Medical Board (3) the Medical Board had recommended that plaintiff's application be denied; (3) the "Disability Committee" of the Board of Trustees had recommended that the Board of Trustees deny the application; and (4) that the Board of Trustees had adopted the Disability Committee's recommendation and denied the application.

107. In addition, the August 19, 2019 Cepin letter referenced a three-page medical recommendation report ("MRR") of the Department of Education's Medical Leaves and Records Administration; i.e., Anne Garner, M.D. for Jean Jeudy, M.D. and Brenda Bennett, M.D., dated July 10, 2019, based on a referral dated almost 18 months previously (February 15, 2018).

108. The MRR states that the most recent examination of plaintiff, as referenced in the Board Resolution, took place on September 16, 2009; i.e., almost ten years prior to Board Resolution and seven years prior to the plaintiff's September, 2016 reconsideration submission undertaken in accordance with the Merits Stipulation.

109. In fact, the examination of plaintiff referred to in the preceding paragraph took place; not on September 16, 2009, but on *October 16, 2009*.

110. In addition, a review of the MRR also confirms that the sole medical records reviewed in the course of preparing the report were (1) an MRI of the cervical spine, dated October 1, 2003; and (2) an MRI of the lumbar spine, dated November 4, 2004.

111. In contrast, the MRR does not provide any indication that any of the reports of plaintiff's treating physician, Dr. Gregory Liberman were reviewed in the course of preparing the report. Specifically, there is no indication that there was any review of (1) the seventy (70) medical reports generated by Dr. Lieberman in the course of his treatment of Mr. Furman from June 27, 2003 to June 10, 2011 and attached to the second administrative appeal as Exhibit "B"; or (2) Dr. Lieberman's November 9, 2010 narrative report and October 14, 2011 addendum; as well as additional diagnostic tests cited therein; namely, an August 5, 2010 MRI (cervical) and March 11, 2010 MRI (cervical); all of which were attached to the second administrative appeal as Exhibit "K".

112. The MRR notes that "[t]he petitioner and respondents have stipulated that the petitioner is disabled within the meaning of Retirement and Social Security Law Section 605 (c), from performing the duties of Custodial Engineer upon which his Retirement System membership is based."

113. After noting that disability is conceded, the MRR, however, goes on to inexplicably determine, under the heading "Findings and Conclusions", that "[a]fter the [June 26, 2003] accident, [plaintiff] was treated conservatively and found fit to return to service by 11/17/2003. There was no disability documented at his examination at DOE medical."

114. In fact, as noted above, while plaintiff returned to work briefly in November, 2003, he then began to, again, miss extensive periods of time; i.e., May, 2004 through January,

2005 and December, 2005 through July, 2007, as a result of his injuries (paragraphs, 33 through 37, supra); culminating in the July, 2010 decision of DOE to terminate his employment; see, paragraph 40, supra.

115. Finally, the MRR is simply wrong when it states that "[t]here was no disability documented at his examination at DOE medical."

116. To the contrary, a review of the Medical Bureau Consultation and Report Form completed by Dr. Walker, in particular, referencing his October 16, 2009 physical examination expressly opines that plaintiff "is not fit to work as a custodian which only aggravates his condition. He is only going to have repeated episodes." see, paragraph 42, supra.

117. Nor does the separate report of Dr. Jeudy, upon an examination also conducted on October 16, 2009, otherwise support a finding of no disability. As noted above, Dr. Jeudy, upon examination, noted a chronic condition; i.e., "low back pain syndrome – cervical pain syndrome"; see, paragraph 42, supra.

118. Moreover, while Dr. Jeudy's October 16, 2009 report does not expressly opine on the issue of whether plaintiff was disabled, his subsequent report of dated February 2, 2010, prepared in the course of plaintiff's first administrative appeal states; "Submitted documents reviewed. Recommendation: ODR (Yes) ADR (No)."; evidencing Dr. Jeudy's opinion that plaintiff was, at a minimum, entitled to receive an Ordinary Disability Retirement benefit; see, paragraph, 48, supra..

119. Accordingly, a review of the totality of the above-described circumstances confirms that the MRR's ultimate conclusion that plaintiff's disability was not caused by his

accident of June 26, 2003 rests on a fundamentally flawed and extremely limited review of the record before the Retirement System.

120. Finally, the MRR also states, under the heading "Findings and Conclusions" that the events of June 26, 2003 did not constitute an "accident" within the meaning of the law, even though, as previously noted, the Merits Stipulation limits the Retirement Board's consideration of a Medical Board recommendation to the issue of whether plaintiff's disability was caused by the June 26, 2003 accident.

121. In contrast, the Merits Stipulation clearly contemplates that the issue of whether the events of June 26, 2003 constituted an "accident" within the meaning of the law, was to be determined, not by the Medical Board, but by the Retirement Board itself; see, paragraph 73.[3]

122. In any event, the MRR's finding of "no accident", is, in any event, unsupportable as a matter of fact and law. Contrary to that finding, nothing in the law obligates an applicant to identify an "unknown or unforeseen event" where, as here, the undisputed facts otherwise establish that the injury resulted from an "accident" within the meaning of the law.

**<u>AS AND FOR A FIRST CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>**

123. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "122" with the same force and effect as though fully set forth herein.

124. As set forth in the Merits Stipulation, an enforceable agreement was entered into by plaintiff and defendants pursuant to which, in consideration of plaintiff's promise to stipulate to a withdrawal of his appeal pending in the Appellate Division: Second Department, defendants

---

3 Copies of the August 19, 2019 Cepin letter, the enclosed Board Resolution and the MRR (redacted) (collectively referred to as the "Final Determination") are attached as Exhibit B.

agreed to administer and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement benefit as amended in accordance with the terms of the Merits Stipulation.

125. Defendants' determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, purporting to deny plaintiff's application was not undertaken in good faith, but rather, solely consisted of the *pro forma* act of the Board of Trustees in formally adopting the same findings of the Medical Board relied on by defendants in issuing the June 1, 2012 determination which was the subject of the previous Article 78 proceeding.

126. At no time prior to rendering the determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, did the defendants initiate the fact-based inquiry and redetermination process provided for in the Stipulation.

127. Following defendants' decision to rescind the determination referred to in the preceding paragraph, defendants again failed to satisfy their obligation under the Merits Stipulation to timely administer and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement.

128. As detailed above, plaintiff, at all times, has performed and fulfilled his obligations arising under the Merits Stipulation.

129. By initially, rendering the determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, purporting to deny plaintiff's application for Accidental Disability Retirement and then, upon rescinding that

determination, failing to timely render a determination of the Application defendants breached the agreement more particularly described above, for which they are liable to plaintiff.

130. Defendants' breach of the agreement has caused plaintiff to suffer pecuniary loss in an amount yet to be determined; but which, upon information and belief, exceeds $75,000, said amount including, (1) loss of his residence in Suffolk County, New York through foreclosure; (2) loss of income plaintiff would have received in the event of a timely determination approving his application; and (3) other expenses incurred based defendants' failure to either approve or deny plaintiff's application within a reasonable period of time after its final submission to defendants.

**AS AND FOR A SECOND CLAIM FOR WHICH RELIEF CAN BE GRANTED**

131. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "130" with the same force and effect as though fully set forth herein.

132. Defendants have breached their obligations, pursuant to the Merits Stipulation and have violated plaintiff's right to apply for, and receive, an Accidental Disability Retirement benefit, pursuant to RSSL § 605.

133. There is a real and justiciable controversy between plaintiff and defendants concerning the entitlement of plaintiff, to an Accidental Disability Retirement benefit, pursuant to RSSL § 605.

134. Plaintiff, JOHN FURMAN is entitled to a judgment declaring the rights, obligations and liabilities of the parties under the above referenced agreement, as well as under RSSL § 605; including, but not limited to a judgment for damages and other relief.

**AS AND FOR A THIRD CLAIM FOR WHICH RELIEF CAN BE GRANTED**

135. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "134" with the same force and effect as though fully set forth herein.

136. N.Y. Const. Art. 5, Sect. 7 states in pertinent part, "[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

137. Plaintiff's right, by virtue of his membership in the Retirement System, to apply for, and to receive, an Accidental Disability Retirement benefit is a constitutionally protected property interest of which he may not be deprived without due process of law; see, *Weaver v. New York City Employees' Retirement System,* 717 F.Supp. 1039, 1043 (S.D.N.Y.1989).

138. Defendants' failure to timely administer, and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement constituted a deprivation of a constitutionally-protected property interest of plaintiff without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

139. At the time of the deprivation alleged above, plaintiff had a legitimate claim of entitlement to an Accidental Disability Retirement benefit as demonstrated by the evidence, to date, which has been provided to defendants which demonstrates that the cause of plaintiff's conceded disability from working is the injury he sustained while working on June 26, 2003 and that the June 26, 2003 injury constituted an "accident" within the meaning of the RSSL which, taken together, was sufficient to give rise to a constitutionally-protected property interest.

140. All of the above actions complained of were undertaken in accordance with an established procedure of defendants Retirement System, Retirement Board and Board of Trustees, and accordingly, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC

CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY (collectively referred to as "the Individual Defendants") would have been able to predict when the depravation complained of would have occurred and, further, would have been in a position to provide plaintiffs with a pre-deprivation hearing.

141. At no time did the Individual Defendants provide plaintiff with a hearing prior to the depravation complained of.

142. Under the circumstances set forth herein, the availability of post-deprivation procedures, including, but not limited to an Article 78 proceeding pursuant to the New York Civil Practice Law and Rules, does not *ipso facto*, satisfy due process.

143. Upon information and belief, the Individual Defendants (1) each participated directly in the constitutional violation more particularly described above, (2) each, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) each participated in the creation of a policy or custom under which the complained of unconstitutional practice occurred and, further, allowed the continuance of such policy or custom, (4) were each grossly negligent in supervising subordinates who committed wrongful acts inextricably linked to the constitutional violation more particularly described above, and/or (5) exhibited deliberate indifference to the rights of plaintiffs by failing to act on information indicating that unconstitutional acts were occurring.

144. By engaging in the acts set forth above, defendants, SANFORD RICH, PETER J.

CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, while acting under color of state law, violated plaintiff's rights to due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

145. As a proximate result of the actions of each Individual Defendant, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and other compensatory, incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**AS AND FOR A FOURTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

146. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "145" with the same force and effect as though fully set forth herein.

147. Defendants' failure to timely administer, and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement constituted a deprivation of plaintiffs' constitutionally-protected right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

148. By engaging in the acts set forth above, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL

KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, while acting under color of state law, violated plaintiff's rights to due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

149. As a proximate result of the actions of each Individual Defendant, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and other compensatory, incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**AS AND FOR A FIFTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

150. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "149" with the same force and effect as though fully set forth herein.

151. As set forth in the Merits Stipulation, an enforceable agreement was entered into by plaintiff and defendants pursuant to which, in consideration of plaintiff's promise to stipulate to a withdrawal of his appeal pending in the Appellate Division: Second Department, defendants agreed to administer and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement benefit as amended in accordance with the terms of the Merits Stipulation.

152. Defendants' Final Determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 19, 2019, purporting to deny plaintiff's application was not undertaken in good faith, but rather, solely consisted of a *de*

*minimus* review of a miniscule excerpt from the medical record by two physicians who (1) did not examine plaintiff; (2) failed to thoroughly review the medical and administrative record generated in the course of plaintiff's application for an Accidental Disability Retirement; his subsequent administrative appeals and the ensuing Article 78 proceeding; (3) failed to adequately address the issue of whether the accident of June 26, 2003 proximately caused plaintiff's conceded disability; and (4) impermissibly rendering a finding on whether the events of June 26, 2003 constituted an "accident" within the meaning of applicable law, despite the fact that both as a matter of law and pursuant to the Merits Stipulation, determination of that issue was, and is, reposed exclusively with the Retirement Board.

153. In addition, defendants' failure to perform their obligations in accordance with the Merits Stipulation is further evidenced by the Retirement Board's (1) action in referencing the issues to be determined pursuant to the Merits Stipulation to a "Disability Committee" even though the Retirement System's own Rules and Regulations do not reference a "Disability Committee" or otherwise authorize such a committee to be impaneled; (2) failure to incorporate the purported actual recommendation of the "Disability Committee" in sufficient detail in the Board Resolution to allow for adequate post-determination review; (4) failure to indicate, in the Board Resolution, which, if any, of the "Findings and Conclusions" from the MRR were relied on by the Retirement Board in rendering the Final Determination to allow for adequate post-determination review; (5) apparently abdicating to either the "Disability Committee" or to the authors of the MRR, its responsibility, under law, to determine whether the events of June 26, 2003 constituted an "accident" within the meaning of the RSSL; and (6) denying plaintiff's

application for Accidental Disability Retirement benefit even though the record before it established that plaintiff had had satisfied all of RSSL § 605's 's eligibility requirements.

154. At no time prior to rendering the Final Determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 19, 2019, did the defendants initiate the fact-based inquiry and redetermination process provided for in the Merits Stipulation.

155. As detailed above, plaintiff, at all times, has performed and fulfilled his obligations arising under the Merits Stipulation.

156. By initially rendering the determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, purporting to deny plaintiff's application for Accidental Disability Retirement and then, upon rescinding that determination, rendering the Final Determination more particularly described above, defendants breached the agreement more particularly described above, for which they are liable to plaintiff.

157. Defendants' breach of the agreement has caused plaintiff to suffer pecuniary loss in an amount yet to be determined; but which, upon information and belief, exceeds $75,000, said amount including, (1) loss of his residence in Suffolk County, New York through foreclosure; (2) loss of income plaintiff would have received in the event of a timely determination approving his application; and (3) the loss of the Accidental Disability Retirement benefits wrongfully denied.

**AS AND FOR A SIXTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

158. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "157" with the same force and effect as though fully set forth herein.

159. Plaintiff's right, by virtue of his membership in the Retirement System, to apply for, and to receive, an Accidental Disability Retirement benefit upon satisfying the eligibility requirements set forth in RSSL § 605, is a constitutionally-recognized contractual entitlement, the wrongful denial of which gives rise to a chose in action in favor of plaintiff and against defendants for breach of contract under New York common law; see, *Lippman v. Bd. Of Educ. Of the Sewanhaka Cent. High Sch. Dist.*, 66 N.Y.2d 313, 496 N.Y.S. 2d 987, 487 N.E.2d 897, 899 (1985).

160. Following defendants' decision to rescind their August 1, 2017 determination, defendants again failed to satisfy their obligation to administer and determine, in accordance with applicable law and in good faith, plaintiff's application for an Accidental Disability Retirement.

161. As detailed above, plaintiff, at all times, has demonstrated his entitlement to an Accidental Disability Retirement benefit, in accordance with RSSL § 605.

162. By initially rendering the determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 1, 2017, purporting to deny plaintiff's application for Accidental Disability Retirement, and then, upon rescinding that determination, rendering the Final Determination more particularly described above, defendants are in breach of their contractual obligation to pay to plaintiff an Accidental Disability Retirement benefit upon his satisfaction of all of the eligibility criteria set forth in RSSL § 605.

163. Defendants' breach of their contractual obligation to plaintiff has caused plaintiff to suffer pecuniary loss in an amount yet to be determined; but which, upon information and belief, exceeds $75,000, said amount including, (1) loss of his residence in Suffolk County, New York through foreclosure; (2) loss of income plaintiff would have received in the event of a timely

determination approving his application; and (3) (3) the loss of the Accidental Disability Retirement benefits wrongfully denied.

**<u>AS AND FOR A SEVENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>**

164. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "163" with the same force and effect as though fully set forth herein.

165. N.Y. Const. Art. 5, Sect. 7 states in pertinent part, "[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

166. Plaintiff's right, by virtue of his membership in the Retirement System, to apply for, and to receive, an Accidental Disability Retirement benefit is a constitutionally protected property interest of which he may not be deprived without due process of law; see, *Weaver v. New York City Employees' Retirement System*, 717 F.Supp. 1039, 1043 (S.D.N.Y.1989).

167. Defendants' denial of plaintiff's application for an Accidental Disability Retirement benefit pursuant to the Final Determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 19, 2019, constituted a deprivation of a constitutionally-protected property interest of plaintiff without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

168. In order to comport with constitutionally-required procedural due process, defendants, at a minimum, were obligated to afford a plaintiff a pre-deprivation hearing before rendering the Final Determination, at which plaintiff could offer testimonial and documentary evidence (including expert testimony) before a hearing officer; see, e.g.; New York Regulations; Title 2. Department of Audit and Control; Chapter VI. New York State and Local Employees' Retirement System and New

York State and Local Police and Fire Retirement System. (NYCRR T. 2, Ch. VI, Pt. 317) ("Scheduling, Adjourning and Conduct of Administrative Hearings").

169. At the time of the deprivation alleged above, plaintiff had a legitimate claim of entitlement to an Accidental Disability Retirement benefit as demonstrated by the evidence, to date, which has been provided to defendants which demonstrates that the cause of plaintiff's conceded disability from working is the injury he sustained while working on June 26, 2003 and that the June 26, 2003 injury constituted an "accident" within the meaning of the RSSL which, taken together, was sufficient to give rise to a constitutionally-protected property interest.

170. All of the above actions complained of were undertaken in accordance with an established procedure of defendants Retirement System, Retirement Board and Board of Trustees, and accordingly, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY (collectively referred to as "the Individual Defendants") would have been able to predict when the depravation complained of would have occurred and, further, would have been in a position to provide plaintiffs with a pre-deprivation hearing.

171. At no time did the Individual Defendants provide plaintiff with a hearing, or an opportunity to proceed to a hearing, prior to the depravation complained of.

172. Under the circumstances set forth herein, the availability of post-deprivation procedures, including, but not limited to an Article 78 proceeding pursuant to the New York Civil Practice Law and Rules, does not *ipso facto*, satisfy due process.

173. Upon information and belief, the Individual Defendants (1) each participated directly in the constitutional violation more particularly described above, (2) each, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) each participated in the creation of a policy or custom under which the complained of unconstitutional practice occurred and, further, allowed the continuance of such policy or custom, (4) were each grossly negligent in supervising subordinates who committed wrongful acts inextricably linked to the constitutional violation more particularly described above, and/or (5) exhibited deliberate indifference to the rights of plaintiffs by failing to act on information indicating that unconstitutional acts were occurring.

174. By engaging in the acts set forth above, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, while acting under color of state law, violated plaintiff's rights to procedural due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

175. As a proximate result of the actions of each Individual Defendant, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury

embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and other compensatory, incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**AS AND FOR AN EIGHTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

176. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "175" with the same force and effect as though fully set forth herein.

177. Plaintiff's right, by virtue of his membership in the Retirement System, to apply for, and to receive, an Accidental Disability Retirement benefit, is a constitutionally protected property interest rising to the level of a valid property interest and fundamental right; see, *Leder v. Am. Traffic Solutions, Inc.*, F. Supp. 3d 211, 223 (E.D.N.Y 2015 (citing cases), of which he may not be deprived without due process of law; see, *Weaver v. New York City Employees' Retirement System,* 717 F. Supp. 1039, 1043 (S.D.N.Y.1989).

178. Defendants' denial of plaintiff's application for an Accidental Disability Retirement benefit pursuant to the Final Determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 19, 2019, constituted a deprivation of a constitutionally-protected property interest of plaintiff in violation of substantive due process in that the Final Determination; among other things (1) cited factual finding which are unsupported by the record evidence before defendants at the time the Final Determination was made; (2) was premised on a *de minimus* and incomplete review of the record evidence: (3) erroneously invoked a purported failure of plaintiff to demonstrate that he was disabled, within the meaning of RSSL § 605 when, in fact, plaintiff and the Retirement System had previously stipulated that he was disabled within the meaning of that statute; and (4) impermissibly relied on

so much of the MRR as, under the heading “Findings and Conclusions”, determined that the events of June 26, 2003 did not constitute an “accident” within the meaning of the law, even though the Merits Stipulation limited the Retirement Board’s consideration of a Medical Board recommendation to the issue of whether plaintiff’s disability was caused by the June 26, 2003 accident.

179. Defendants’ unwarranted and unconscionable delay in determining plaintiff’s application for an Accidental Disability Retirement benefit; their repeated reliance on cursory and incomplete factual findings; their habitual disregard of lawful procedure, including their own rules and regulations, in administering plaintiff’s application and their arbitrary and outrageous action in rendering the Final Determination denying that application, confirm that defendants’ conduct, in its totality, transgressed the outer limits of legitimate government action; see, *Harlen Assocs. V. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001).

180. By engaging in the acts set forth above, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, while acting under color of state law, violated plaintiff’s rights to substantive due process of law, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

181. As a proximate result of the actions of each Individual Defendant, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury

embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and other compensatory, incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**<u>AS AND FOR A NINTH CLAIM FOR WHICH RELIEF CAN BE GRANTED</u>**

182. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "181" with the same force and effect as though fully set forth herein.

183. Defendants' denial of plaintiff's application for an Disability Retirement benefit pursuant to the Final Determination, as referenced in the letter of Maria Cepin, Director of Membership Services to Mr. Furman, dated August 19, 2019, constituted a deprivation of plaintiffs' constitutionally-protected right to equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

184. By engaging in the acts set forth above, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, while acting under color of state law, violated plaintiff's right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, for which they are each individually liable to plaintiffs pursuant to 42 U.S.C. § 1983.

185. As a proximate result of the actions of each Individual Defendant, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and

other compensatory, incidental and consequential damages and expenses, all to plaintiff's damage, in an amount to be determined at trial.

**AS AND FOR A TENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

186. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "185" with the same force and effect as though fully set forth herein.

187. The actions and inactions of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK, in the face of plaintiff's' showing that the denial of his entitlement to apply for, and receive, an Accidental Disability Retirement Benefit was illegal, unauthorized and would work a deprivation of vested rights previously accruing to plaintiff, evinced (1) a failure on the part of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK to take corrective action after learning of the unlawful conduct of their subordinate employees and agents, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY; (2) the creation of a policy or custom fostering the unlawful conduct complained of; (3) gross negligence in their supervising of their subordinate employees and agents who engaged in unlawful conduct; and (4) deliberate indifference to the rights of plaintiff by failing to act on information regarding the unlawful conduct of their employees and agents, while acting under color of state law, and

pursuant to their assigned duties as employees and agents of said defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK.

188. The unlawful conduct of defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY constituted actions taken or decisions made by Retirement System, Retirement Board, Board of Trustees and THE CITY OF NEW YORK officials with final decision making authority.

189. Moreover, the unlawful conduct of defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY resulted from practices so persistent and widespread that they constituted a custom of which constructive knowledge and acquiescence can be implied on the part of Retirement System, Retirement Board, Board of Trustees and THE CITY OF NEW YORK policy making officials.

190. Upon information and belief, defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK knew, or should have known, that the failure to properly train or supervise and/or the failure to adopt proper policies, procedures or

standards, and/or the failure to properly investigate and/or reckless disregard or gross indifference would result in the deprivation of rights secured to plaintiff by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, for which defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK are each individually liable to plaintiff pursuant to 42 U.S.C. § 1983.

191. As a result of the failure of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK to take remedial action to properly investigate, and/or the reckless disregard or gross indifference by defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK, said defendants, had a policy, practice or custom which condoned or permitted the denial of entitlements and rights otherwise protected by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

192. Upon information and belief, defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK, intentionally, knowingly, maliciously and/or recklessly permitted and/or allowed the continuation of such a policy, practice or custom.

193. Upon information and belief, as a direct and proximate result of such policies, practice or customs, defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK intentionally, deliberately or with reckless indifference deprived plaintiff of his constitutional and civil rights.

194. The aforesaid reckless indifference, callous disregard and/or gross neglect by defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY

OF NEW YORK represents egregious conduct that is shocking to the conscience.

195. As a proximate result of the actions of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK, plaintiff has suffered and continues to suffer from severe and lasting psychological trauma and injury embarrassment, humiliation and mental anguish and injury, economic hardship, and lost benefits and other compensatory, incidental and consequential damages and expenses, all to plaintiffs damage, in an amount to be determined at trial.

**AS AND FOR A ELEVENTH CLAIM FOR WHICH RELIEF CAN BE GRANTED**

196. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "195" with the same force and effect as though fully set forth herein.

197. At all times relevant herein, defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, acted within the scope of their authority as employees and agents of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK; while engaged in the performance of their duties and while acting in furtherance of the business of those defendants.

198. Because the actions of defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT,

VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, were undertaken within the scope of their authority as employees and agents of defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK; defendants, the Retirement System, the Retirement Board, the Board of Trustees and THE CITY OF NEW YORK are vicariously liable for the actions said Individual Defendants.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, JOHN FURMAN, demands **Trial By Jury** and a judgment in his favor and against defendants as follows;

A. On the First Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

B. On the Second Claim For Which Relief Can Be Granted, declaring the rights, obligations and liabilities of the parties under the agreement entered into between plaintiff and defendants more particularly described at paragraphs 71-74 of this Complaint, as well as Retirement and Social Security Law § 605; including, but not limited to a judgment for damages and other relief and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

C. On the Third Claim For Which Relief Can Be Granted, against defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

D. On the Fourth Claim For Which Relief Can Be Granted, against defendants, SANFORD

RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

E. On the Fifth Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

F. On the Sixth Claim For Which Relief Can Be Granted, against all defendants, for pecuniary damages, compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

G. On the Seventh Claim For Which Relief Can Be Granted, against defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

H. On the Eighth Claim For Which Relief Can Be Granted, against defendants, SANFORD RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

I. On the Ninth Claim For Which Relief Can Be Granted, against defendants, SANFORD

RICH, PETER J. CALANDRELLA, ISAAC CARMIGNANI, RICHARD CARRANZA, GENEAL CHACON, APRIL CHAPMAN, JOSE DAVILA, DEBORAH DILLINGHAM, NATALIE GREEN GILES, MICHAEL KRAFT, VANESSA LEUNG, GARY LINNEN, JOHN MADERICH, DONALD NESBIT, LINDSAY OATES, LORI PODVESKER, SHANNON WAITE, and MIGUELINA ZORRILLA-ARISTY, in their individual capacities, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph G, below

J. On the Tenth Claim For Which Relief Can Be Granted, against defendants, THE BOARD OF TRUSTEES OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE RETIREMENT BOARD OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, and THE CITY OF NEW YORK, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

K. On the Eleventh Claim For Which Relief Can Be Granted, against defendants, THE BOARD OF TRUSTEES OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE RETIREMENT BOARD OF THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE BOARD OF EDUCATION RETIREMENT SYSTEM OF THE CITY OF NEW YORK, and THE CITY OF NEW YORK, for compensatory damages and for punitive damages, the amount of all damages prayed for having yet to be determined, to be determined at trial; as well as all additional legal and equitable relief to which plaintiff may be entitled and for reasonable attorney's fees and injunctive relief as specifically prayed for at paragraph L, below;

L. Pursuant to plaintiffs' prayer for declaratory relief, that defendants be ordered to issue a determination approving plaintiff's Application for Accidental Disability Retirement and authorizing the full measure of benefits to which the approval of the Application entitles plaintiff;

M. That defendants be ordered to pay to plaintiff punitive damages in an amount to be determined at trial, to punish defendants for their willful and malicious misconduct and as may be deemed by the court to be necessary to deter defendants from engaging in such misconduct in the future;

N. For such additional, equitable and legal relief as the court may deem just and proper;

O. For the costs and expenses of this action; and

P. For reasonable attorney's fees.

Dated: Smithtown, New York
September 23, 2019

Yours, etc.

SCHAEFER LAW GROUP, P.C.

/s/ Wayne J. Schaefer

Wayne J. Schaefer, Esq. (WS1129)
*Attorneys for Plaintiff, JOHN FURMAN*
186 West Main Street
Smithtown, New York 11787
Tel. (631) 382-4800