UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------x

JOHN FURMAN,

        Plaintiff,

    -against-

SANFORD RICH, et al.,

        Defendants.

--------------------------------------------x

**MEMORANDUM AND ORDER**
19-cv-2748(EK)(JO)

ERIC KOMITEE, United States District Judge:

        Plaintiff John Furman brings this action against the City of New York, the Board of Education Retirement System of the City of New York (BERS), the Board of Trustees (a/k/a the Retirement Board) of BERS (BOT), each member of the BOT individually, and the Executive Director of BERS, Mr. Sanford Rich (collectively, the Defendants).  Plaintiff's Second Amended Complaint (SAC) alleges 42 U.S.C. § 1983 and state-law claims arising from Defendants' rejection of Plaintiff's application for accidental disability retirement benefits.  Defendants now move to dismiss the SAC under Rule 12(b)(6).  The Court grants the motion to dismiss Plaintiff's federal claims but denies the motion with respect to two of Plaintiff's state-law claims.  In light of Plaintiff's pending Article 78 action, the Court will stay proceedings on the remaining state-law claims until the Article 78 court issues its decision.

1

## I.  Factual Background

Plaintiff worked as a custodian engineer at the New York City Department of Education (DOE) from July 25, 2001 until approximately July 29, 2010.  *See* SAC at ¶ 30, ECF No. 44; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint at 2, ECF No. 61 (Opp.).  Through his employment, Plaintiff became a member of the New York City Employees' Retirement System.  *See* N.Y.C. Admin. Code § 13-104.  Members of this system were eligible for two types of disability benefits: occupational disability retirement benefits (ODR) and accidental disability retirement benefits (ADR).  *See id.* at § 13-167 (ODR); *id.* at § 13-168 (ADR).  ADR benefits are more generous.  *Compare id.* at § 13-174 (ODR) *with id.* at § 13-175 (ADR).  Qualifying for them, however, is harder to do.  While ODR benefits are available to any employee who becomes disabled after spending ten years in the retirement system, *see* N.Y. Retire. & Soc. Sec. Law § 605(b)(1) & (c), ADR benefits are reserved only for applicants whose disability was "the natural and proximate result of an accident . . . sustained in the performance of his duties," regardless of the employee's tenure in the system, *see id.* at § 605(b)(3).

The ADR-application process involves several steps.  First, an applicant submits an application to BERS' "medical

2

board" (the "Medical Board").  *See* N.Y.C. Admin. Code
§ 13-168(a).  After conducting a "[m]edical examination" and
"investigation," the Medical Board issues a certification to the
BOT as to whether the applicant qualifies for ADR benefits.  *Id.*
The Medical Board's findings are conclusive with respect to
whether the applicant is "physically or mentally incapacitated,"
but the BOT has final say as to whether the applicant's
incapacitation was caused by an "accident" in the course of
employment.  *Id.*  The BOT then renders a decision approving or
rejecting the ADR application.  *Id.*  The applicant may appeal an
adverse determination.

This litigation arises from Defendants' denial of
Plaintiff's ADR application.  Plaintiff claims he is entitled to
ADR benefits because his disability was caused by an on-the-job
accident that he sustained in 2003 when he fell down a set of
stairs at work.  Defendants, however, have consistently found
that Plaintiff's disability was caused by another injury.  This
disagreement has inspired years of litigation.

Plaintiff filed for ADR benefits in August 2009.  SAC
at ¶ 41.  BERS rejected Plaintiff's application.  *Id.* at ¶ 47.
It then denied his appeal without explanation.  *Id.* at
¶¶ 48, 51; Ex. A at ¶ 45, ECF No. 44-1 (2012 Article 78
Petition).  At BERS' invitation, Plaintiff filed a second
administrative appeal, which BERS again denied.  SAC at

3

¶¶ 51-52, 57.  Having exhausted his administrative remedies, Plaintiff brought an Article 78 proceeding in Kings County Supreme Court seeking judicial review of BERS' decision, claiming the procedures BERS employed were unlawful and that the BOT and Medical Board failed to meaningfully review the record. 2012 Article 78 Petition at ¶¶ 55-72.  As defendants, Plaintiff named BERS, the BOT, and BERS' then-current Executive Director and members of the BOT.  *Id.* at 1-2.  The Supreme Court denied the Article 78 claim in January 2015.  SAC at ¶ 63.  Plaintiff then appealed that decision to the Appellate Division — Second Department.  *Id.* at ¶¶ 64-65.

While that appeal was ongoing, the parties to the 2012 Article 78 proceeding agreed on a temporary cessation of hostilities.  On June 1, 2016, they entered into a stipulation whereby Plaintiff agreed to withdraw his appeal in exchange for BERS submitting his application to *de novo* review by the Medical Board and the BOT (the "Stipulation").  *Id.* at ¶¶ 67-68.  This time the only two questions would be whether the 2003 incident (1) was an "accident" that (2) "caused" Plaintiff's disability. *Id.* at ¶ 68.

The Stipulation allowed Plaintiff to submit additional evidence, which he completed on September 16, 2016.  *Id.* at ¶¶ 75, 80.  On August 1, 2017, approximately eleven months later, BERS informed Plaintiff that his application was denied.

4

*Id.* at ¶ 83.  BERS' rejection letter attached a Medical Board report finding that Plaintiff's 2003 injury did not cause his disability because he remained fit to work until 2009 (the "2017 Report").  Trotter Declaration, Ex. C at 3, 6, ECF No. 58-3. Portions of the 2017 Report claimed to be based on evidence Plaintiff submitted, *see id.* at 3, but the report did not explicitly address that evidence.

In response, Plaintiff threatened to bring yet another Article 78 proceeding unless BERS submitted his application to additional review.  SAC at ¶¶ 84-85, 89.  Plaintiff argued that the "conclusory nature" of the 2017 Report "[gave] rise to a legitimate doubt as to whether" BERS "simply had the [BOT] formally adopt the same findings" as before.  *Id.* at ¶ 88.  On October 3, 2017, BERS rescinded its decision and returned Plaintiff's application to the Medical Board for further review. *Id.* at ¶ 91.

Plaintiff submitted another round of evidence, concluding on January 31, 2018.  *Id.* at ¶ 96.  On May 10, 2018, the Medical Board issued a new report and recommendation (the "2018 Report").  Trotter Declaration, Ex. I, ECF No. 58-6.  The 2018 Report reached the question of whether the 2003 fall constituted an accident, finding that it did; but the report reached the same conclusion on causation as the 2017 Report — namely, that the 2003 incident was not the cause of the

Plaintiff's ultimate inability to continue working.  *Id*.  The
BOT, however, remanded the recommendation back to the Medical
Board as "inconsistent with the terms of the [Stipulation]," *see*
Defendants' Memorandum of Law in Support of Its Motion to
Dismiss the Second Amended Complaint at 6, ECF No. 59, perhaps
because the 2018 Report was ten sentences long and devoid of any
medical analysis or reference to Plaintiff's evidence.

    Neither the BOT nor the Medical Board took further
action on Plaintiff's application for over a year.  It was not
until the initial conference in this action (on August 20, 2019)
that Defendants confirmed Plaintiff's application had been
denied.  SAC at ¶ 103.  Shortly thereafter, Plaintiff received a
denial letter attaching a Medical Board report dated July 10,
2019 (the "2019 Report").  Trotter Declaration, Ex. J, ECF
No. 58-10.  Citing the same reasons as before, the 2019 Report
found that Plaintiff's 2003 incident was not the "cause" of his
injuries but reversed — without explanation — the Medical
Board's prior finding that the 2003 fall was an accident.  *Id*.
at 6.  Like its predecessors, the 2019 Report did not address
explicitly any evidence that Plaintiff submitted.  *Id.* at 5-6.

    Following BERS' final decision, Plaintiff amended his
complaint to allege the decision violated the Stipulation.  He
also returned to state court, commencing an Article 78
proceeding in November 2019 challenging Defendants' final

decision as arbitrary and capricious and violative of due process.  SAC at ¶ 124-25; Ex C, 2019 Article 78 Proceeding at ¶¶ 101-28, ECF No. 44-3.  Defendants then moved this Court to dismiss Plaintiff's SAC under Rule 12(b)(6).

## II.  Discussion

In analyzing a 12(b)(6) motion, "the court's task is to assess the legal feasibility of the complaint."  *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [Plaintiff's] favor."  *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).

### A. Timeliness of Defendants' Motion

Plaintiff first contends that Defendants' motion to dismiss the SAC is untimely.  This argument is predicated on Defendants' decision to file an answer in response to the initial complaint, *see* Answer, ECF No. 28, rather than a motion to dismiss, and then only later to move to dismiss the SAC — despite the SAC claims in question being substantially identical to those in the initial complaint.  As Plaintiff acknowledges, this argument finds no support in binding case law.  *See* Letter at 2, ECF No. 68.  That is because failure to bring a 12(b)(6) motion against an initial complaint does not waive the defense.  *See* Fed. R. Civ. P 12(h)(2) ("Failure to state a claim upon

7

which relief can be granted . . . may be raised: . . . in any pleading . . . [or] by a motion under Rule 12(c).").  Because pleadings on the SAC remain open, Defendants' 12(b)(6) motion is timely.[1]  The Court will proceed to the merits of Defendants' motion.

### B. Section 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983 for violations of procedural due process, substantive due process, and equal protection under the Fourteenth Amendment.  To assert a claim under Section 1983, a plaintiff must establish that a person acting under color of state law deprived them of rights, privileges, or immunities guaranteed by the Constitution or federal law.  *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

### 1. Procedural Due Process

Plaintiff first argues that the procedure Defendants employed to determine his ADR application violated the Due Process Clause of the Fourteenth Amendment.  In evaluating this claim, the Court is guided by two principles:  First, its task is to evaluate the processes that the state employed, not the merits of its decision.  *See Kuck v. Danaher*, 600 F.3d 159, 165

---

[1] Even if pleadings on the SAC were closed, the Court would convert the motion into a Rule 12(c) motion for judgment on the pleadings, which involves an identical analysis to a 12(b)(6) motion.  *See Ubakanma v. Midwood Chayin Aruchim*, 09-cv-2647(DLI)(RLM), 2010 WL 1206500, at *2 n.3 (E.D.N.Y. Mar. 29, 2010) ("[T]he standards under Rule 12(b)(6) and 12(c) are identical.").

(2d Cir. 2010) ("The viability of [the plaintiff's] due process claim does not turn on the merits of his initial challenge; rather, it concerns whether he received the process he was due."). And second, those processes are ultimately to be measured, for purposes of the due-process claim, against the U.S. Constitution — not state law, the Stipulation between the parties, or another standard. *See, e.g.*, *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process.")

Because there is no dispute that Plaintiff was deprived of his property interest in ADR benefits, the only question is whether "the procedures followed . . . were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). In analyzing this question, courts weigh the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Those factors are "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the fiscal and administrative burdens that the additional or substitute procedures entail." *Isaacs v. Bowen*, 865 F.2d 468, 476 (2d Cir. 1989) (citing *Mathews*, 424 U.S. at 335).

Defendants must concede that the review process in this case could have been handled better.  At various times and over many years, they acted to dispose of Plaintiff's claim without adequate explanation; reversed themselves, again without explanation; and delayed perhaps longer than ideal.  But the fact that these deliberative bodies faltered — even repeatedly — is not dispositive.  Plaintiff must identify specific procedural shortcomings that trip constitutional thresholds.

Plaintiff alleges that the procedures employed here were inadequate in two ways.  First, he claims he was entitled to an oral hearing before his application was denied.  Second, he argues that the twenty-nine-month delay[2] in processing his application violated due process.  The Court disagrees that these alleged deficiencies violated Plaintiff's due-process rights in either way, taken separately or together.

Both of the claimed procedural shortcomings are alleged to have ended in the same deprivation (of ADR benefits).  Thus, the first *Mathews* factor — the nature of the private interest affected — applies equally to both allegations.  A plaintiff's private interest in ADR benefits, while undoubtedly

---

[2] The Court finds that the maximum amount of delay attributable to Defendants is twenty-nine months, reflecting (1) the ten-and-one-half months between receipt of Plaintiff's evidentiary submission on September 16, 2016 and issuing the decision on August 1, 2017; and (2) the eighteen-and-one-half months between receiving Plaintiff's evidentiary submission on January 31, 2018 and issuing the final decision on August 19, 2019.

significant, has been held to be less compelling than interests in entitlements specifically based on financial need.  *See Basciano v. Herkimer*, 605 F.2d 605, 609-10 (2d Cir. 1978) (finding that interests in disability benefits are "less compelling" because they do not "turn on financial need"); *Isaacs*, 865 F.2d at 476 (stating that private interests in obtaining Medicare benefits are "considerable, but they are hardly as significant, for example, as an individual's right to receive welfare" (internal quotation marks omitted)). Accordingly, the first *Mathews* factor does not require process commensurate with, for instance, applications for welfare benefits.

Because application of the second and third *Mathews* factors depends on the nature of the claimed violation, these factors are analyzed separately by claim.

### a. Pre-Deprivation Hearing

Plaintiff claims Defendants violated his due-process rights by failing to afford him a hearing at which he could "offer testimonial and documentary evidence (including expert testimony) before a hearing officer."  SAC at ¶ 194.  This challenge must overcome numerous precedents upholding these procedures against similar attacks.  *See Basciano*, 605 F.2d at 611 (finding that the ADR procedure satisfies due process without an oral hearing); *see also McDarby v. Dinkins*, 907 F.2d

11

1334, 1337 (2d Cir. 1990) (same); *Flannelly v. Bd. of Trustees*,
6 F. Supp. 2d 266, 268-69 (S.D.N.Y. 1998) (rejecting claim that
due process requires an oral hearing on ADR applications,
because in this context "appearance at a hearing is not
necessary for an opportunity to be heard"); *Calzerano v. Bd. of
Trustees*, 877 F. Supp. 161, 164 (S.D.N.Y. 1995) (rejecting
similar claim because "Plaintiff was given the opportunity to
present his case . . . in writing").  Indeed, the Second Circuit
has expressly rejected the need for oral hearings in processing
ADR benefits applications, explaining in *Basciano* that the City
had a "very substantial interest in avoiding the administrative
cost of setting up a procedure for trial-type hearings which we
are satisfied ultimately would contribute very little to the
accuracy and reliability of eligibility determinations."  605
F.2d at 611.

        The Second Circuit's holding in *Basciano* applies
squarely to these facts.  The critical question before
Defendants was whether Plaintiff's 2003 injury caused his
disability.  That determination required analysis of medical
evidence that could be "as effectively presented in writing as
orally."  *See id*.  Moreover, Plaintiff availed himself of ample
opportunities to submit written evidence both before and after
entering the Stipulation.  Weighing the *Mathews* factors
together, the Court concludes that due process did not require

an oral hearing, and Defendants' motion to dismiss this claim is therefore granted.  The Court need not reach Defendants' other bases for dismissal.[3]

### b. Administrative Delay

Plaintiff next claims that Defendants violated his due-process rights by taking twenty-nine months to finally resolve his application.  Administrative delay, however, generally violates due process "only where it renders the prescribed procedures meaningless in relation to the private interest at stake." *Kuck v. Danaher*, 600 F.3d 159, 163 (2d Cir. 2010).[4]

Applying this standard, courts in this Circuit have rejected challenges predicated only on lengthy administrative delays.  *See Isaacs*, 865 F.2d. at 475-77.  Where procedural due

---

[3] Defendants contend that Plaintiff's challenge to the absence of a pre-deprivation hearing is time-barred, even though the SAC alleges violations occurring after the Stipulation took effect in July 2016.  These alleged violations transpired within three years of Plaintiff's bringing this suit (on May 9, 2019) and therefore are not time-barred.

Defendants next argue that Plaintiff's claim fails because the Stipulation did not obligate them to afford Plaintiff a pre-deprivation hearing.  Plaintiff's claim of entitlement to a hearing, however, is not based on the Stipulation but rather on the Due Process Clause, and nothing in the record suggests Plaintiff intended to waive his due-process rights by entering the Stipulation. *See Morris v. N.Y.C. Emps. Ret. Sys.*, 129 F. Supp. 2d 599, 609 (S.D.N.Y. 2001) ("In the civil context, a party waiving constitutionally protected rights — even when doing so through the execution of a contract — must also be made aware of the significance of the waiver.").

[4] It is undisputed that Plaintiff had an interest in receiving timely resolution of his application. *See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) ("[I]mplicit in the conferral of an entitlement is a further entitlement, to receive the entitlement within a reasonable time.") (internal quotation marks omitted).

process challenges to delayed processes have succeeded, the delays were typically caused by specified administrative procedures or policies, rather than mere negligence or inaction. *See, e.g.*, *Kuck,* 600 F.3d at 163 (state agency had a policy of erroneously declining firearm licenses for the purpose of delay); *Kraebel*, 959 F.2d at 398-99, 405 (eighteen-month delay in recovering tax abatement was partly caused by agency's excessive procedural requirements).

Unlike these cases, Plaintiff does not allege that Defendants' delay was the product of any specific policy or procedures.  Instead, Plaintiff claims he was the victim of an idiosyncratic process that consumed twenty-nine months.  This Court is not aware of any case in this Circuit upholding a procedural due process claim based purely on administrative delay, and Plaintiff has identified none.  To the contrary, courts in this Circuit regularly deem administrative delays of roughly two years constitutional.  *See Isaacs*, 865 F.2d at 477 (finding that a nineteen-month delay in processing Medicare benefits did not violate due process because such delay was not "remarkable in the Medicare, Social Security and employment benefits systems"); *Liberty Cable Co. v. City of New York*, 60 F.3d 961, 964 (2d Cir. 1995) (collecting cases upholding administrative delays of up to two years in processing benefits applications); *see also Dukes v. N.Y.C. Emps. Ret. Sys.*, 361 F.

14

Supp. 3d 358, 374 (S.D.N.Y. 2019) (finding that a two-year delay in processing an ADR application was "not so great as to automatically constitute a due process violation").

And here the delay stemmed at least in part from Defendants' efforts at error-correction, sometimes at Plaintiff's request.  These extra efforts are to be commended, even if the idiosyncrasies that gave rise to the initial errors are not.  Moreover, it bears mention that some of the delay emanated from the unique facts surrounding the Stipulation, which required Defendants to engage in a bespoke process for this case.  For all these reasons, the Court concludes that Defendants' delay in processing Plaintiff's application did not violate due process.

### c. Other Violations

To the extent Plaintiff asserts due-process violations arising from Defendants' failure to adequately review his evidence or explain their decision-making, these claims must be dismissed under Rule 12(b)(6).  These complaints are not about BERS' process *per se*, but rather about the unusual execution of that process in this case.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."

15

*Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  "Where a deprivation at the hands of a government actor is random and unauthorized, hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (internal quotation marks omitted).  In these instances, "a postdeprivation hearing, such as an Article 78 proceeding, is the only form of due process that can be made available."  *King v. N.Y.C. Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 400 (E.D.N.Y. 2016).

There is no indication that BERS has an "established state procedure" of ignoring evidence or providing conclusory explanations for its decisions.  Instead, the BOT and Medical Board's alleged failure to properly consider evidence or explain their reasoning are akin to "random and unauthorized" acts that no pre-deprivation process could prevent.  *See Dukes*, 361 F. Supp. 3d at 372-73 (finding that BERS' alleged failure to review evidence is a "random and unauthorized" act).  Post-deprivation Article 78 review was not only available to address Plaintiff's claims, but Plaintiff in fact availed himself of that process both before and after entering the Stipulation.  Accordingly, these allegations do not establish a procedural due process violation.

## 2. Substantive Due Process

Plaintiff's second Section 1983 claim asserts that the events giving rise to his procedural due process claim also violated his right to substantive due process.  To establish a substantive due process violation, a plaintiff must allege they had "(1) a valid property interest or fundamental right; and (2) that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of government authority." *King*, 212 F. Supp. 3d at 401 (internal quotation marks omitted); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.").

Although Plaintiff had a "valid property interest" in his disability benefits, nothing in the SAC suggests Defendants' actions were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  Plaintiff's allegations sound in the language of arbitrary administrative action, but do not plausibly describe the kind of shocking government misconduct required to make out a substantive due process allegation.  *See Natale*, 170 F.3d at 263 (holding that substantive due process does not "forbid governmental actions that might fairly be deemed arbitrary or capricious and for that

17

reason correctable in a state court lawsuit seeking review of administrative action").[5]  Defendants' motion to dismiss this claim is therefore granted.

### 3. Equal Protection

Plaintiff's final Section 1983 claim asserts that the Defendants violated his rights under the equal protection clause by treating Plaintiff differently than other applicants.  In effect, Plaintiff asserts a "class of one" discrimination claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment.").  To prevail on this theory, a plaintiff must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to

---

[5] In support of his substantive due process claim, Plaintiff argues that "discovery has yielded evidence" which "could form the basis for a finding by a trier of fact that defendants deliberately and maliciously stacked the Disability Committee as part of an effort to secure an unfavorable recommendation by the committee on plaintiff's application."  Opp. at 19-20. Because these allegations were raised for the first time in Plaintiff's opposition brief, the Court does not consider them in deciding this motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Muhammad v. Bonner*, 05-cv-1851(RJD)(LB), 2008 WL 926574, at *4 n.5 (E.D.N.Y. Mar. 31, 2008) (noting that courts "should not consider" allegations raised "for the first time in [a plaintiff's] opposition to defendants' motion").

> exclude the possibility that the defendant
> acted on the basis of a mistake.

*Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005); *see also*

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)

("[C]lass-of-one plaintiffs must show an extremely high degree

of similarity between themselves and the persons to whom they

compare themselves."). Here, Plaintiff's equal-protection claim

fails because the SAC does not identify any comparators

whatsoever, let alone similar ones. Accordingly, Defendants'

motion to dismiss this claim is granted.

### C. State-Law Claims

Plaintiff asserts three breach-of-contract claims

under state law. Two of these claims allege breaches of the

Stipulation. The third claim asserts a breach of the contract

described in Article 5, Section 7 of the New York State

Constitution, which grants members of retirement systems a

contractual right to certain pension benefits.

### 1. Breach of the Stipulation

Plaintiff claims Defendants violated both the express

terms of the Stipulation and the implied covenant of good faith

and fair dealing. To sustain a claim for breach of contract, a

plaintiff must allege "(1) the existence of a contract between

itself and [the defendant], (2) performance of the plaintiff's

obligations under the contract, (3) breach of the contract, and

(4) damages to the plaintiff caused by [the] defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011). There is no dispute that the Stipulation is a binding contract, or that Plaintiff performed his obligations thereunder by withdrawing his Article 78 appeal. The only question is whether Defendants breached the agreement.[6]

It is clear from the face of the SAC that Defendants did not violate the express terms of the Stipulation. The Stipulation imposed three obligations on BERS:

> (A) "[T]he Medical Board . . . shall report in writing to the [BOT] its conclusions and recommendations upon petitioner's application;" (B) "[t]he [BOT] shall, by a resolution adopted by a majority vote of the Board as a whole, render a determination: 1) adopting the conclusion of the Medical Board as to disability; 2) adopting or rejecting the recommendations of the Medical Board as to whether that disability was caused by an injury received in education service; and 3) adopting or rejecting the recommendations of the Medical Board as to whether the incident that resulted in any such injury constituted an 'accident', as provided by law"; and (C) "the [BOT] shall send, by first class mail to petitioner . . . a written determination reflecting the decision of the Board."

---

[6] Defendants first argue that Plaintiff is not entitled to seek relief from this Court for breach of the Stipulation because the Stipulation limited Plaintiff's recourse for breach to an Article 78 proceeding. This argument fails because nothing in the Stipulation required Plaintiff to bring claims for breach of the Stipulation in an Article 78 proceeding.

Trotter Declaration, Ex. B at ¶¶ 6-7, 9, ECF No. 58-2.
Plaintiff's claim for breach of the Stipulation's express terms
is therefore dismissed.

Nevertheless, parties to a contract must do more than
comply with its express terms.  "Implicit in all contracts is a
covenant of good faith and fair dealing in the course of
contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d
384, 389 (1995).  This covenant encompasses "any promises which
a reasonable person in the position of the promisee would be
justified in understanding were included" in the contract.  *511
W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153
(2002) (internal quotation marks omitted).  Where, as here, "the
contract contemplates the exercise of discretion, this pledge
includes a promise not to act arbitrarily or irrationally in
exercising that discretion." *Dalton*, 87 N.Y.2d at 389; *see also
Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 819 (2d
Cir. 2014) (noting that *Dalton* requires "that discretion be
exercised in a non-arbitrary manner").

Plaintiff's SAC adequately pleads a breach of this
covenant.  The Stipulation gave BERS discretion to decide
Plaintiff's ADR application.  BERS was obligated to exercise
that discretion in a rational and non-arbitrary way, and
Plaintiff plausibly alleges that it failed to do so.  Most
notably, Plaintiff alleges that BERS ignored the evidence

Plaintiff submitted, even though the Stipulation explicitly referenced that evidence and invited Plaintiff to submit additional documentation.  *See Dalton*, 87 N.Y.2d at 390 (holding that defendant testing service breached the implied covenant by ignoring evidence it invited the plaintiff to submit).

Moreover, Plaintiff alleges other potential defects in BERS' process that could suggest a degree of irregularity.  As described in the SAC, BERS' first post-Stipulation decision was concededly inadequate.  After BERS withdrew that decision, the Medical Board issued another recommendation, which the BOT also appears to have recognized as deficient (with its remand order). Defendants then took no action on Plaintiff's application for over a year.  Plaintiff next heard about the status of his application at the initial conference in this case, when Defendants announced his application was denied.  This decision, it is alleged, contradicted the finding the Medical Board made in a prior report concerning whether the 2003 incident was an accident, and Plaintiff alleges that Defendants rushed the decision after Plaintiff commenced this action.  *See*, *e.g.*, SAC at ¶¶ 161, 209.

Given these allegations, the Court cannot conclude — at this preliminary stage of the proceedings and as a matter of law — that BERS performed its contractual obligations in good faith.  BERS' (and the BOT's) motion to dismiss Plaintiff's

claims for breach of the Stipulation is therefore denied.
However, the motion is granted as to the individual defendants,[7]
because they were neither parties to the Stipulation nor the
2012 Article 78 proceeding (or appeal) which the Stipulation
settled.

### 2. Breach of Article V, Section 7 of the New York State Constitution

Plaintiff's final contract claim alleges that
Defendants violated Article V, Section 7 of the New York State
Constitution.  That section provides that "membership in any
pension or retirement system of the state or of a civil division
thereof shall be a contractual relationship, the benefits of
which shall not be diminished or impaired."  N.Y. Const. Art. V,
§ 7.

Plaintiff states a claim for breach of contract under
this provision.  The SAC alleges (1) that a contract was formed
when Plaintiff joined the City's retirement system as a
custodian engineer in 2001; (2) that Plaintiff performed his
side of the bargain by working for the City; (3) that Defendants
breached the contract by refusing to award Plaintiff ADR
benefits to which he was entitled; and (4) that this breach

---

[7] The individual defendants are Sanford Rich (the Executive Director of
BERS) and the members of the BOT:  Peter J. Calandrella, Richard Carranza,
Isaac Carmignani, Geneal Chacon, April Chapman, Jose Davila, Deborah
Dillingham, Natalie Green Giles, Michael Kraft, Vanessa Leung, Gary Linnen,
John Maderich, Donald Nesbit, Lindsey Oates, Lori Podvesker, Shannon Waite,
and Miguelina Zorrilla-Aristy.

caused Plaintiff to sustain damages. *See Dukes*, 361 F. Supp. 3d at 370-71 (finding that plaintiff stated a claim for breach of Article V, Section 7 by alleging BERS wrongly denied her application for accidental death benefits). The parties dispute whether Plaintiff's 2003 injury caused his disability, and thus whether Defendants' denial of Plaintiff's ADR application impaired his entitlement to disability benefits. Because this is a mixed question of law and fact, the Court cannot resolve this claim at this stage. Accordingly, Defendants' motion to dismiss this claim is denied.

### III. Disposition of This Litigation

Because no federal claims remain, the Court must consider whether to stay this action in favor of Plaintiff's Article 78 proceeding. A court may, "in the exercise of its discretion, . . . stay proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981). In deciding whether to issue a stay, courts consider:

> (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties,

24

> counsel and witnesses; and (7) possibility
> of prejudice to a party as a result of the
> stay.

*De Carvalhosa v. Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982)
(internal quotation marks omitted).

The Court finds that a stay is proper.  Plaintiff's
Article 78 proceeding involves the same parties and raises
substantially the same fundamental question — whether Defendants
issued a sound, non-arbitrary decision on Plaintiff's
application — despite the differing theories of law.  Indeed,
portions of Plaintiff's Article 78 petition appear to have been
lifted directly from the SAC in this case.  Concerns of judicial
efficiency thus favor staying one of the two proceedings.  Even
if the Article 78 proceeding may afford Plaintiff more limited
relief, the state court should resolve the issues underlying
Plaintiff's New York State Constitution claim in the first
instance, given that issues of state law are in dispute.
Moreover, there is no reason to believe that the Article 78
court is a less convenient forum or would otherwise prejudice
either party's rights.

This Court therefore stays proceedings on Plaintiff's
breach-of-contract claims pending resolution of his Article 78
action.  Plaintiff's claims for declaratory relief, however,
shall be dismissed in light of the concurrent state action.  *See*
*Fay v. Fitzgerald*, 478 F.2d 181, 182-83 (2d Cir. 1973) ("[A]

federal district court should in the exercise of discretion, decline to exercise [diversity] jurisdiction over a [declaratory judgment] action raising issues of state law when those same issues are being presented contemporaneously in state courts." (internal quotation marks omitted)).

### IV.   Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Second Amended Complaint is granted with respect to all claims except Plaintiff's claims for breach of the contract described in Article V, Section 7 of the New York State Constitution and — as against all but the individual defendants — for breach of the implied covenant of good faith and fair dealing.  Proceedings on the remaining claims shall be stayed pending resolution of Plaintiff's Article 78 action.  The parties shall notify the Court within ten days of the resolution of the Article 78 proceeding.


SO ORDERED.

_____/s Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:   Brooklyn, New York
         July 14, 2020

26